UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ERIN PUMA and TERESA SRMACK-BRINKMAN,<br>  Plaintiffs,<br><br> vs.<br><br>RICHARD HALL, ROBERT GREGORY, ACE HOLDING COMPANY, LLC, ACE MORTGAGE FUNDING f/k/a ACE MORTGAGE FUNDING, INC., ARCHER TITLE, LLC, ACE IMAGING, LLC, MILLENIUM FUNDING GROUP, ROARK CAPITAL GROUP, and PLATINUM HOLDINGS, LLC,<br>  Defendants. | )<br>)<br>)<br>)<br>)  1:08-cv-1451-LJM-JMS<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**ORDER ON DEFENDANTS' MOTIONS FOR JUDGMENT ON THE PLEADINGS**

This matter comes before the Court on defendants', Richard Hall ("Hall"), Robert Gregory ("Gregory"), Roark Capital Group ("Roark"), and Platinum Holdings, LLC ("Platinum") (collectively, the "Defendants"), Motions for Judgment on the Pleadings under Federal Rule of Civil Procedure 12(c) (Dkt. Nos. 56, 46, 54), Motions to Strike Plaintiffs' Exhibits under Federal Rule of Civil Procedure 12(f) (Dkt. Nos. 71, 68), and Roark's Motion for Attorney's Fees, which it included in its Motion for Judgment on the Pleadings (Dkt. No. 47 at 16-17). Plaintiffs', Erin Puma ("Puma") and Teresa Srmack-Brinkman ("Brinkman") (collectively, the "Plaintiffs"), Complaint alleges that the Defendants are liable for unpaid wages under Ind. Code § 22-2-5-1, *et seq.* (the "Indiana Wage Payment Statute") and Ind. Code § 22-2-9-2 (the "Indiana Wage Claims Statute") (collectively, the "Indiana Wage Statutes"); conversion under Indiana common law; unpaid wages and overtime pursuant

to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 207(o), 213; breach of employment contracts under Indiana common law; and for punitive damages.

The Court has considered the parties' arguments and rules as follows.

## I. **BACKGROUND**

For purposes of the Defendants' Motions, the Court accepts as true the well-pleaded factual allegations from the Complaint. *Killingsworth v. HSBC Bank Nevada*, N.A., 507 F.3d 614, 618 (7th Cir. 2007). Puma began her employment with Ace Mortgage Funding ("Ace Mortgage") as a loan officer in February 2001. Compl. ¶ 12. Brinkman's career as a loan officer with Ace Mortgage began in 2000. *Id.* ¶ 13. Both Plaintiffs were eventually promoted to Assistant Vice President in 2003. *Id.* ¶¶ 12, 13. Ace Mortgage tendered the Plaintiffs' respective employment contracts on a take it or leave it basis. *Id.* ¶ 15. According to their terms, the employment contracts are governed by the laws of the State of Indiana and are binding on Ace Mortgage's successors and assigns. *Id.* ¶¶ 16-17. The contracts provide a basis for calculating Puma and Brinkman's salaries and include provisions for the Plaintiffs to obtain reimbursement for their employment-related expenses. *Id.* ¶ 18.

Hall was a member of the board of directors of Ace Holding Company, LLC ("Ace Holding"). *Id.* ¶ 7. Hall was also the President and Chief Executive Officer of Ace Holding, Ace Mortgage, Archer Title, LLC ("Archer"), and Ace Imaging, LLC ("Ace Imaging"). *Id.* Robert Gregory ("Gregory") was a member of Ace Holding's board of directors and was the co-founder, along with Hall, of Ace Mortgage. *Id.* ¶ 8. In addition, Gregory was the Executive Vice President of Ace Holding, Ace Mortgage, Archer, and Ace Imaging. *Id.*

Hall and Gregory used and abused the Ace façade for their personal gain by siphoning off revenues, benefits, and assets that should have been allocated to Puma and Brinkman.  *Id.* ¶ 20.  For example, Hall and Gregory purchased a condominium in Florida and charged the costs associated with the acquisition of the condominium to, among others, the Plaintiffs.  *Id.* ¶ 21.  In addition, Hall and Gregory, acting on behalf of Ace, acquired Archer by charging the costs to Puma and Brinkman.  *Id.* ¶ 22.  Although Hall and Gregory promised to share their profits with Puma and Brinkman, the Plaintiffs never received any proceeds from the various acquisitions.  *Id.* ¶¶ 21-22.  Hall and Gregory improperly charged costs incurred in the course of their various schemes as "Branch Expenses," which reduced amounts that should have been paid as part of the Plaintiffs' salaries.  *Id.* ¶¶ 20, 22-26.  In addition, during their respective employments, Puma and Brinkman worked in excess of forty hours per week, but did not receive overtime compensation.  *Id.* ¶ 14.  When these issues were brought to Ace's attention, Ace failed to pay the wages that it owed to the Plaintiffs, but Ace did repay male Assistant Vice Presidents.  *Id.* ¶ 33.  On March 6, 2007, Hall demoted Puma and Brinkman to loan officer positions, but did not demote male Assistant Vice Presidents.  *Id.* ¶ 32.

When Roark acquired Ace Mortgage in December 2005, it began to participate in the practices described above.  *Id.* ¶¶ 9, 29.  Furthermore, Roark siphoned off revenues that Puma and Brinkman generated by arbitrarily charging them for "management fees."  *Id.* ¶ 30.  At the very least, Roark wrongfully received revenues, which resulted in the Plaintiffs' salaries being diminished.  *Id.* ¶¶ 17, 30.[1]

---

[1] The Court attaches no legal significance to the allegation that Roark was a "co-conspirator, aide[r] and abettor."  *Compare* Compl. ¶ 17, *with Brooks v. Ross*, 578 F.3d

## II. **STANDARD**

The Defendants raised a Rule 12(b) defense in their Rule 12(c) motion. Accordingly, the appropriate standard is gleaned from Rule 12(b)(6). *Killingsworth*, 507 F.3d at 619. A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but a plaintiff's complaint may not merely state "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. ----, 129 S.Ct. 1937, 1949 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement." *Id.* (quoting *Twombly*, 550 U.S. at 557). Rather, to survive a motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged[,]" not when the plaintiff only raises a "sheer possibility that the defendant has acted unlawfully." *Id.*

"[A]t some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (internal quotation marks omitted). "[T]he height of the pleading requirement is relative to the circumstances[,]"

---

574, 581 (7th Cir. 2009) ("[I]n considering the plaintiff's factual allegations, courts should not accept as adequate . . . conclusory legal statements.")

*Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009), and "[d]etermining the plausibility of a claim is a context-specific task that requires [the Court] to draw on [its] judicial experience and common sense." *Brown v. JP Morgan Chase Bank*, 334 Fed. Appx. 758, 759 (7th Cir. 2009) (internal quotation marks omitted) (quoting *Iqbal*, 129 S.Ct. at 1950).

### III. DISCUSSION

In Count I of their Complaint, the Plaintiffs assert a claim for unpaid wages under the Indiana Wage Statutes. Defendants argue that Count I of the Complaint should be dismissed because the Plaintiffs failed to plead facts from which the Court can reasonably infer that any of the Defendants were the Plaintiffs' "employers" within the meaning of the Indiana Wage Statutes. *Black v. Employee Solutions, Inc.*, 725 N.E.2d 138, 143 (Ind. Ct. App. 2000). Under the Indiana Wage Statutes, the primary consideration in determining the existence of an employment relationship is the purported employer's right to control the hired party. *Id.* The "right of control" is determined by considering the following factors: 1) the right to discharge, 2) mode of payment, 3) supplying tools or equipment, 4) belief by the parties in the existence of an employer-employee relationship, 5) control over the means used in the results reached, 6) length of employment, and 7) establishment of the work boundaries. *Id.* In their Complaint, the Plaintiffs allege that they had employment contracts with Ace Mortgage and that Hall and Gregory disregarded Ace Mortgage's corporate structure, which resulted in the denial of the Plaintiffs' wages. Compl. ¶¶ 12, 13, 20, 35. In addition, the Plaintiffs allege that Hall demoted the Plaintiffs while they were employed by Ace Mortgage. *Id.* ¶ 32. Altogether, the Court concludes that the allegations in the Complaint support the reasonable inference that Hall and Gregory were the Plaintiffs'

"employers" within the meaning of the Indiana Wage Statutes. *Iqbal*, 129 S.Ct. at 1949; *Black*, 725 N.E.2d at 143.[2]

The Defendants also argue that the Plaintiffs' claim under the Indiana Wage Claims Statute should be dismissed because the Indiana Wage Claims statute does not allow for a direct court action. *St. Vincent Hosp. and Health Care Ctr., Inc. v. Steele*, 766 N.E.2d 699, 705 (Ind. 2002). Rather, Plaintiffs must first submit their wage claim to the Indiana Department of Labor. *Id.* The Plaintiffs did not respond in any fashion to Platinum's Motion, but when they responded to Roark's motion on August 17, 2009, the Plaintiffs conceded that they submitted their claim to the Indiana Department of Labor and were still awaiting a response. Pl.'s Resp. to Roark's Mot. at 22. However, by the time the Plaintiffs responded to Hall and Gregory's Motion on September 9, 2009, they were able to attach, as exhibits, letters from the Office of the Indiana Attorney General, which authorized them to pursue their claim under the Indiana Wage Claim Statute. Dkt. Nos. 63-12, -13. Therefore, the Plaintiffs argue that they have satisfied the prerequisite for filing a claim in this Court under the Indiana Wage Claims Statute. *Steele*, 766 N.E.2d at 705.

---

[2] The Court notes Hall and Gregory's argument that the Indiana Wage Payment Statute does not apply to employees who are separated from their employment involuntarily. *Black*, 725 N.E.2d at 141; Hall & Gregory's Reply Br. at 2. In their Complaint, the Plaintiffs allege that their demotion was the equivalent of a "constructive discharge." Compl. ¶ 32. While the statutory scheme seems to preclude a joint action under both the Indiana Wage Payment Statute and the Indiana Wage Claims Statute, *Black* 725 N.E.2d at 141, the issue was first presented to the Court in Hall and Gregory's reply brief in support of their Motion. *Compare* Hall & Gregory's Br. at 5-6, *with* Hall & Gregory's Reply Br. at 2. Hall and Gregory are not permitted to raise new arguments for the first time in reply. *Multi-Ad Servs., Inc., v. N.L.R.B.*, 255 F.3d 363, 370 (7th Cir. 2001). In any event, the Court is confident that the issue is more conducive to summary judgment, should it continue to present itself.

In their reply brief, Hall and Gregory point out that under Indiana law, an action for a forfeiture of penalty given by statute is subject to a two-year statute of limitations. Ind. Code § 34-11-2-4. The Indiana Wage Claims Statute imposes a penalty in the amount of ten percent of the amount due the former employee for each day that the amount remains unpaid, in addition to the amount that the former employee remains unpaid, plus costs and attorney's fees. Ind. Code § 22-2-5-2. Hall and Gregory argue that because the Indiana Wage Claims Statute does not permit a direct court action, the Plaintiffs were required to request permission to bring their claim from the Indiana Department of Labor and receive authorization from the Office of the Indiana Attorney General before March 6, 2009, two years after Hall "constructively discharged" the Plaintiffs. Compl. ¶ 32. Therefore, because they failed to receive authorization until August 21, 2009, Hall and Gregory submit that the Plaintiffs claim under the Indiana Wage Claims Statute is time barred. Hall and Gregory's Reply Br. at 2-5.

Because Hall and Gregory, through no fault of their own, first raised this issue in their reply brief, the Court **ORDERS** the Plaintiffs to **SHOW CAUSE** on or before December 30, 2009, why Hall and Gregory's Motion should not be granted with regard to the Plaintiffs' claim under the Indiana Wage Claims Statute. Hall and Gregory will have fifteen (15) days to respond.

Although the Plaintiffs alleged sufficient facts to support a reasonable inference that Hall and Gregory were the Plaintiffs' "employers" within the meaning of the Indiana Wage Statutes, the Complaint is devoid of factual allegations that mention Roark or Platinum in the context of the Plaintiffs' employments. *See generally* Compl. The Plaintiffs allege that they were Platinum's and Roark's "employees," *Id.* ¶ 35, but such conclusory labels are

insufficient when pleading a cause of action. *Iqbal*, 129 S.Ct. at 1949. In order to state a plausible claim under the Indiana Wage Payment Statute, the Plaintiffs are required to plead facts that allow the Court to draw the reasonable inference that Roark and Platinum had the right to control a variety of aspects relating to the Plaintiffs' jobs and that Roark and Platinum denied the Plaintiffs the right to receive their wages in a timely fashion. *Id.*; *Black*, 725 N.E.2d at 141, 143. The Plaintiffs' short and conclusory allegations with regard to Roark and Platinum fail to meet this standard. Nowhere in their Complaint, did the Plaintiffs allege that Roark or Platinum had the right to discharge them, pay them, or exercise any other sort of control over them. Accordingly, the Court **GRANTS** Roark's and Platinum's Motions with respect to the Plaintiffs' claim under the Indiana Wage Statutes.

In Count II, the Plaintiffs allege that the Defendants' deliberate and intentional non-payment of wages and other monies owed to Plaintiffs constitutes civil conversion under Ind. Code §§ 34-24-3-1, 35-43-4-3. Compl. ¶¶ 37-38. The Defendants argue that Count II should be dismissed because, under Indiana law, the failure to pay an indebted sum of money does not constitute conversion. Ind. Code § 35-43-4-3; *Tobin v. Ruman*, 819 N.E.2d 78, 89 (Ind. Ct. App. 2004) (concluding that the wrongful withholding of retained earnings is, at most, a failure to pay a debt, which does not constitute conversion as a matter of law). Rather, "money may be the subject of a conversion action only if it is a determinable sum with which the defendant was entrusted to apply to a certain purpose." *Id.* (internal quotation marks omitted). In their Complaint, the Plaintiffs do not allege facts that would allow the Court to draw the reasonable inference that the Plaintiffs entrusted determinable sums of money for the Defendants to apply to a certain purpose. *See generally* Compl.; *Compare Tobin*, 819 N.E.2d at 89, *with Roake v. Christensen*, 528

N.E.2d 789, 791 (Ind. Ct. App. 1988) (concluding that an employer's continued acceptance of health insurance premiums from its employee, while allowing the employee's policy to lapse, constituted conversion). Accordingly, the Plaintiffs failed to plead a plausible conversion claim under Indiana law. Therefore, the Court **GRANTS** the Defendants' Motions with respect to Count II of the Complaint.

In Count III, the Plaintiffs allege that the Defendants violated the FLSA. Roark and Platinum argue that the Plaintiffs failed to plead sufficient facts to support the reasonable inference that either Roark or Platinum was the Plaintiffs' "employer" as that term is defined by case law interpreting the FLSA. *See Karr v. Strong Detective Agency, Inc.*, 787 F.2d 1205, 1206 (7th Cir. 1985) (holding that whether a party is an "employer" within the meaning of the FLSA is a question of law). Similar to the Plaintiffs' claim under the Indiana Wage Statutes, to state a plausible FLSA claim, the Plaintiffs are required to plead facts from which the Court can draw the reasonable inference that Roark and Platinum had supervisory authority over the Plaintiffs and abused that authority by violating the Plaintiffs' rights under the FLSA. *Luder v. Endicott*, 253 F.3d 1020, 1022 (7th Cir. 2001); *Estate of Suskovich v. Anthem Health Plans of Va., Inc.*, 553 F.3d 559, 566 (7th Cir. 2009). For the same reasons that applied to their claim under the Indiana Wage Statutes, the Plaintiffs failed to plead facts to support the reasonable inference that either Platinum or Roark was their "employer" as that term is defined by case law interpreting the FLSA. *Id.*; *Iqbal*, 129 S.Ct. at 1949. Therefore, the Court **GRANTS** Roark's and Platinum's Motions with respect to Count III of the Plaintiffs' Complaint.

In Count IV of their Complaint, the Plaintiffs allege that the Defendants breached the employment contracts between the Plaintiffs and Ace Mortgage. *See* Compl. Exs. A, B (Puma's and Brinkman's employment contracts). Platinum argues that although the employment contracts state that the obligations of Ace Mortgage are binding on its successors and assigns (Compl. Exs. A, B at 6), the Plaintiffs have not plead facts from which a reasonable inference can be drawn that Platinum is a successor or assign of Ace Mortgage. *See generally* Compl. The Court agrees. In their Complaint, the Plaintiffs do not allege that Platinum was a party to the employment contracts between the Plaintiffs and Ace Mortgage, nor that Platinum was a successor to Ace Mortgage. Accordingly, the Court **GRANTS** Platinum's Motion with respect to Count IV of the Complaint.

Similarly, Roark argues that it did not assume Ace Mortgage's contractual liability with the Plaintiffs and, therefore, it cannot be held liable on employment contracts to which only the Plaintiffs and Ace Mortgage are parties. Compl. ¶¶ 17, 46-47; Compl. Exs. A, B. To support this argument, Roark attached its agreement to purchase a sixty-percent equity interest in Ace Holding (the "Agreement"). Def.'s Br. Ex. A. According to Roark, Ace Holding and Ace Mortgage are separate entities and, regardless, Roark was not a successor to Ace Holding. Def.'s Br. at 9-10. Rather, it merely purchased a sixty-percent equity interest in Ace Holding, and is not a successor or assign to Ace Holding's or Ace Mortgage's employment contracts. Def.'s Br. Ex. A.

In response, the Plaintiffs designated six exhibits to support their allegation that Roark is a "successor and/or assign of Ace Mortgage." Compl. ¶ 17; Pl.'s Br. Exs. 1-6.

Roark replied by pursuing a different theory.[3]  Def.'s Reply Br. at 16.  According to Roark, the Agreement is no longer necessary to support their Motion, because the Plaintiffs' allegation that Roark is a "successor" to Ace Mortgage is a legal conclusion, which the Court is not bound to accept.  *Iqbal*, 129 S.Ct. at 1950.  The Court disagrees.  The Complaint states that Ace Mortgage's employment contracts with the Plaintiffs were binding on Ace Mortgage's successors and assigns.  Compl. Exs. A, B at 6.  The Plaintiffs' allegation that Roark is a "successor" to Ace Mortgage is a factual allegation, which relates to their legal claim that Ace Mortgage breached its employment contracts with the Plaintiffs. *Cf. Iqbal*, 129 S.Ct. at 1950.

When Roark attached the Agreement to its original Motion, it argued that it was proper for the Court to consider the Agreement because the Plaintiffs referred to the Agreement in their Complaint.  Fed. R. Civ. P. 10(c).  The Plaintiffs' breach of contract claim is not based on an alleged breach of the Agreement.  Rather, Roark's exposure to liability from the employment contracts between the Plaintiffs and Ace Mortgage depends on whether Roark is truly a "successor" to Ace Mortgage.  Compl. ¶ 17.  Stated otherwise, the Plaintiffs did not refer directly to the Agreement by alleging that Roark is a "successor"

---

[3] In addition, Roark moved to strike the Plaintiffs' exhibits in response to Roark's Motion, arguing that the exhibits improperly bolstered the Plaintiffs' Complaint at the pleading stage.  Dkt. No. 68.  The Court agrees.  *See Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").  With the exception of Dkt. No. 60-2, "Excerpts From Acquisition Documents," the Plaintiffs' exhibits represent an impermissible attempt to demonstrate the reasonableness of the inferences that the Plaintiffs' argue can be drawn from their Complaint.  Accordingly, Roarks Motion to Strike is **GRANTED** with respect to Exhibits 1, 3-6 and **DENIED** with respect to Exhibit 2.  For the same reason, Platinum, Hall, and Gregory moved to strike the Plaintiffs' exhibits in response to Hall and Gregory's Motion.  Dkt. No. 71.  Platinum, Hall, and Gregory's Motion to Strike is also **GRANTED**.  *Car Carriers, Inc.*, 745 F.2d at 1107.

to Ace Mortgage. *Id.* However, if the Agreement spells out Roark's liability on Ace Mortgage's employment contracts with the Plaintiffs, then the Agreement is "central" to the Plaintiffs' breach of contract claim. *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661-62 (7th Cir. 2002).

Ordinarily, a court could examine the Agreement to determine its effect on the parties' rights and liabilities. *See id.* at 661 (quoting 5 Wright & Miller, *Federal Practice & Procedure: Civil 2d*, § 1327 at 766 (1990)) ("The court is not bound to accept the pleader's allegations as to the effect of the [agreement], but can independently examine the document and form its own conclusions as to the proper construction and meaning to be given the material."). However, in this case, there are two reasons why the Court cannot undertake this inquiry. First, it appears that the Plaintiffs wish to present evidence outside of the Agreement to establish Roark's liability on the Plaintiffs employment contracts with Ace Mortgage. *See* Pl.'s Br. at 2; Pl.'s Opp'n to Roark's Mot. to Strike at ¶ 2 ("Plaintiffs claims arise out of Roark's conduct, not the . . . Agreement."). Second, the parties do not direct the Court to any portion of the Agreement where Roark's liability on Ace Mortgage's employment contracts is either established or disclaimed. Because, as the parties have demonstrated, this issue is not cut-and-dried, the Court **DENIES** Roark's Motion with respect to Count IV of the Complaint. *Cf. McCready v. eBay, Inc.*, 453 F.3d 882, 891-92 (7th Cir. 2006) (examining an attachment to the defendant's motion to dismiss, when "there [was] no factual dispute as to its contents."). The parties may address the issue of Roark's liability as a purported successor to Ace Mortgage in a timely submitted summary judgment motion.

Lastly, in Count V of their Complaint, the Plaintiffs allege that the Defendants are liable for punitive damages. Platinum, Hall, and Gregory argue that Count V should be dismissed because the Plaintiffs have not brought any claims that, if they succeed on the merits, would entitle them to punitive damages. The Plaintiffs failed to respond to this argument, and when a plaintiff fails to "offer any response to a well developed and supported . . . argument that challenges a particular claim . . . [he] abandon[s] . . . that claim or issue." *Butler v. Indianapolis Metropolitan Police Department*, No. 1:07-cv-1103, 2009 WL 2841079, at *4 (S.D. Ind. Sep. 1, 2009) (Hamilton, C.J.) (citing *Weinstein v. Schwartz*, 422 F.3d 476, 477 n.1 (7th Cir. 2005)). Accordingly the Court **GRANTS** Platinum's and Hall and Gregory's Motions with respect to Count V.

Roark did not argue that Count V should be dismissed, but instead argued that it is entitled to attorney's fees under Ind. Code § 34-52-1-1(b). For purposes of awarding attorney's fees pursuant to Ind. Code. § 34-52-1-1(b), a claim is "frivolous" if it is made primarily to harass or maliciously injure another or if counsel is unable to make a good faith and rational argument on the merits of the claim. *St. Mary Med. Ctr. V. Baker*, 611 N.E.2d 135, 137 (Ind. Ct. App. 1993). A claim is "unreasonable" if, based upon the totality of the circumstances, including the law and facts known at the time of filing the claim, no reasonable attorney would consider the claim justified or worthy of litigation. *Tipton v. Roerig, a Div. of Pfizer Pharm.*, 581 N.E.2d 1279, 1284 (Ind. Ct. App. 1991). A claim is "groundless" if no facts exist which support the legal claim relied upon and presented by the losing party. *Id.* A court is not required to find an improper motive to support an award of attorney's fees; rather, an award may be based solely upon the lack of a good faith and

rational argument in support of the claim. *Breining v. Harkness*, 872 N.E.2d 155, 161 (Ind. Ct. App. 2007).

With the above standards in mind, the Court notes that it is obvious from the Complaint that the Plaintiffs attempted to assert claims against a complex entanglement of interrelated corporate entities and their principals. The Complaint paints a dark picture of the Plaintiffs' exploitation at the hands of the Defendants. The Plaintiffs plead some claims that were not viable, but the claims were not so far off the mark as to test the bounds of reasonableness. Therefore, the Court cannot conclude as a matter of law that the Plaintiffs' Complaint against Roark was frivolous, unreasonable, or groundless as those terms have been defined by Indiana courts. *Tipton*, 581 N.E.2d at 1284; *St. Mary Med. Ctr.*, 611 N.E.2d at 137.

## IV. **CONCLUSION**

For the foregoing reasons, the defendants', Richard Hall, Robert Gregory, Roark Capital Group, and Platinum Holdings, LLC, Motions for Judgment on the Pleadings are **GRANTED** in part and **DENIED** in part. With respect to Count I of the Complaint, the Plaintiffs' claim under the Indiana Wage Statutes, Hall and Gregory's Motion is **DENIED**, but the Court **ORDERS** the Plaintiffs to **SHOW CAUSE** on or before December 30, 2009, why Hall and Gregory's Motion should not be granted with regard to the Plaintiffs' claim under the Indiana Wage Claims Statute. Hall and Gregory will have fifteen (15) days to respond. Roark's and Platinum's Motions are **GRANTED** with respect to Count I. With respect to Count II, the Defendants' Motions are **GRANTED**. In addition, the Court

**GRANTS** Roark's and Platinum's Motions with respect to Count III of the Complaint. However, with respect to Count IV, the Court **GRANTS** Platinum's Motion but **DENIES** Roark's Motion. In addition, the Court **GRANTS** Platinum's and Hall and Gregory's Motions with respect to Count V of the Complaint.

Furthermore, the Court **DENIES** Roark's Motion for Attorney's Fees, which it included in its Motion for Judgment on the Pleadings (Dkt. No. 47 at 16-17). However, Roark's Motion to Strike (Dkt. No. 68) is **GRANTED** with respect to Plaintiffs' Exhibits 1, 3-6 and **DENIED** with respect to Plaintiffs' Exhibit 2. In addition, Platinum, Hall, and Gregory's Motion to Strike (Dkt. No. 71) is **GRANTED**. No Judgment will issue at this time.

IT IS SO ORDERED this 17th day of December, 2009.

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution to:

Marcia A. Mahony
KIGHTLINGER & GRAY
mmahony@k-glaw.com

Harmony A. Mappes
BAKER & DANIELS - Indianapolis
harmony.mappes@bakerd.com

Shannon Bogard Mize
RILEY BENNETT & EGLOFF LLP
smize@rbelaw.com

Donald S. Smith
RILEY BENNETT & EGLOFF LLP
dsmith@rbelaw.com

Peter G. Tamulonis
KIGHTLINGER & GRAY
ptamulonis@k-glaw.com

Joseph H. Yeager Jr
BAKER & DANIELS - Indianapolis
jhyeager@bakerd.com